# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 104

APRIL TERM, A.D. 2025

September 26, 2025

JOSEPH DANIEL POLZER

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS'
COMPENSATION DIVISION,

Appellee
(Respondent).

S-25-0023

*Appeal from the District Court of Natrona County*
*The Honorable Kerri M. Johnson, Judge*

*Representing Appellant:*
    Donna D. Domonkos, Domonkos & Thorpe, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
    Bridget Hill, Wyoming Attorney General; Mark Klaassen, Deputy Attorney General; Peter Howard, Senior Assistant Attorney General; Holli J. Welch, Senior Assistant Attorney General.

*Before BOOMGAARDEN, C.J., and FOX,\* GRAY, FENN, and JAROSH, JJ.*

\* Justice Fox retired from judicial office effective May 27, 2025, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2025), she was reassigned to act on this matter on May 28, 2025.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    Joseph Daniel Polzer challenges a decision from the Office of Administrative Hearings (OAH) denying him workers' compensation benefits after finding his cervical spine injury was not causally related to his work accident.  Mr. Polzer argues the Workers' Compensation Division (Division) improperly assigned the matter to OAH because it was a medically contested case, which by statute must be referred to the Medical Commission. We agree and reverse and remand.

## *ISSUE*

[¶2]    Did the Division properly refer the question of whether Mr. Polzer's cervical spine injury was caused by his work accident to the OAH, instead of the Medical Commission?

## *FACTS*

[¶3]    On December 28, 2020, Mr. Polzer was inspecting an underground fiber optics project in Evansville, Wyoming.  To access the project, Mr. Polzer had to remove a manhole cover and climb down a ladder into the manhole.  As he removed the manhole cover and began to lower himself down the ladder, his foot slipped, and he fell into the hole.  As he fell, he hit his lower back on a portion of the manhole cover.  He grabbed the edge of the manhole with his right hand, heard a pop, and felt immediate pain in his right shoulder.  He let go and kept falling, hitting his left knee on the ladder before landing on the ground.

[¶4]    On December 31, 2020, the Division determined the injuries to Mr. Polzer's right shoulder, left knee, and lumbar spine (lower back) were compensable.  Mr. Polzer had not reported or sought compensation for head or cervical spine (neck) injuries at the time of this determination, and he did not object to the determination or otherwise request to add his cervical spine to the list of injuries for which he sought to be compensated.  It was not until February 2021 that Mr. Polzer sought coverage for surgery on his cervical spine.  The Division denied coverage, concluding there was no causal relationship between his cervical spine injury and his work accident.  Mr. Polzer filed a petition for review.  The Division referred the matter for a contested case hearing before the OAH.

[¶5]    The OAH agreed with the Division and concluded Mr. Polzer's cervical spine injury was not caused by his work accident.  Mr. Polzer appealed to the district court, the district court affirmed, and Mr. Polzer timely appealed to this Court.

## *STANDARD OF REVIEW*

[¶6]    "When an appeal is taken from a district court's review of an administrative agency's decision, we examine the case as if it came directly from the agency, giving no

1

special deference to the district court's decision." *McCallister v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 66, ¶ 7, 510 P.3d 1051, 1054 (Wyo. 2022) (citing *Matter of Worker's Comp. Claim of Vinson*, 2020 WY 126, ¶ 25, 473 P.3d 299, 308 (Wyo. 2020); *Guerrero v. State ex rel., Dep't of Workforce Servs., Workers' Comp. Div.*, 2015 WY 88, ¶ 11, 352 P.3d 262, 265 (Wyo. 2015)). Wyo. Stat. Ann. § 16-3-114 governs judicial review of administrative actions, and provides:

> The reviewing court shall:
>
> .    .    .
>
> > (ii)    Hold unlawful and set aside agency action, findings and conclusions found to be:
> >
> > > (A)    Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
> >
> > .    .    .
> >
> > > (D)    Without observance of procedure required by law;

Wyo. Stat. Ann. § 16-3-114(c)(ii)(A), (D) (LexisNexis 2025).

[¶7]    The arbitrary and capricious standard serves as a "safety net to catch agency action which prejudices a party's substantial rights or which may be contrary to the other [Wyoming Administrative Procedure Act] review standards yet is not easily categorized or fit to any one particular standard." *Hart v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 81, ¶ 12, 512 P.3d 640, 645 (Wyo. 2022) (quoting *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 23, 188 P.3d 554, 561 (Wyo. 2008)). "We review an agency's conclusions of law *de novo*[] and will affirm only if the agency's conclusions are in accordance with the law." *Id.* (quoting *Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 118, ¶ 13, 259 P.3d 1161, 1164 (Wyo. 2011)).

## DISCUSSION

[¶8]    Mr. Polzer contends the Division improperly referred his case to the OAH. He argues that whether his cervical spine injury was caused by his work accident required evaluating conflicting medical evidence, which mandated review by the Medical Commission and not the OAH. The Wyoming Worker's Compensation Act directs the Division to refer "medically contested cases" to the Medical Commission:

2

**Medical commission; hearing panels; creation; membership; duties; rulemaking.**

.   .   .

(b)     . . . . The duties of the commission shall be:

.   .   .

(iv)     To furnish three (3) members of the commission to serve as a medical hearing panel to hear cases referred for hearing. **The division shall refer medically contested cases to the commission for hearing by a medical hearing panel.** The decision to refer a contested case to the office of administrative hearings or a medical hearing panel established under this section shall not be subject to further administrative review.[1]

Wyo. Stat. Ann. § 27-14-616(b)(iv) (LexisNexis 2025) (emphasis added); *see also* Wyo. Stat. Ann. § 27-14-601(k)(v) ("Upon receipt of a request for hearing, the division shall immediately provide notice of the request to the appropriate hearing authority as determined pursuant to W.S. 27-14-616[.]"); Wyo. Admin. Rules, Dep't of Workforce Servs., Workers' Comp. Div., ch. 6, § 1(a) (2017) (Current Division Rules) (Upon receipt of an employee's request for a hearing, the Division "shall immediately transmit a copy of the request and a notice of request for hearing to the Office of Administrative Hearings (OAH) or Workers' Compensation Medical Commission as appropriate."). Wyo. Stat. Ann. § 27-14-616 uses the word "shall," which we have interpreted as obligating the Division to refer "medically contested" cases to the Medical Commission. *McCallister*, ¶ 12, 510 P.3d at 1056 ("Because of the mandatory 'shall,' the Division does not have an option; it must determine if a case is medically contested and, if it is, that case must be referred to the Medical Commission." (quoting *Bando v. Clure Bros. Furniture*, 980 P.2d 323, 327–28 (Wyo. 1999))).[2]

---

[1] "The referral decision is subject to judicial review." *Bando v. Clure Bros. Furniture*, 980 P.2d 323, 328 (Wyo. 1999) (citation omitted). *See also French v. Amax Coal W.*, 960 P.2d 1023, 1030 (Wyo. 1998).
[2] Where the primary issue is not medically contested, we have directed that the case be heard by OAH. In *French* and *Jacobs*, this Court reversed the Medical Commission's rulings because no medically contested issues were presented. In *French*, the primary issue was a legal question—the applicability of a rule of law. *French*, 960 P.2d at 1028. In *Jacobs v. State ex rel., Wyo. Med. Comm'n*, the Medical Commission determined collateral estoppel and res judicata prohibited the claimant's claim for benefits. *Jacobs v. State ex rel., Wyo. Med. Comm'n*, 2005 WY 104, ¶ 10, 118 P.3d 441, 444–45 (Wyo. 2005). We held "[w]hen the Medical Commission determined . . . that there were no medically contested issues before it, . . . [it] was obligated to return the case to the Division for referral to the [OAH]." *Id.*

[¶9]    The Current Division Rules define "medically contested cases."  The rules state,

> the phrase "medically contested cases" shall **include those cases in which the primary issue** is:
>
> A.    a claimant's percentage of physical impairment;
>
> B.    whether a claimant is permanently totally disabled;
>
> C.    whether a claimant who has been receiving TTD benefits remains eligible for those benefits under W.S. § 27-14-404(c); or,
>
> D.    **any other issue, the resolution of which is primarily dependent upon the evaluation of conflicting evidence as to medical diagnosis, medical prognosis, or the reasonableness and appropriateness of medical care**.

Current Division Rules, ch. 6, § 1(a)(i) (emphasis added).  We interpreted this definition in *McIntosh v. State ex rel. Wyo. Med. Comm'n*:

> the rule does not state that the phrase "medically contested cases" shall "only include" or "exclusively include" cases involving issues (A) through (D). . . . [I]t is reasonable to conclude that cases where the primary issue is one of those identified in the rule are part of the group of medically contested cases the Division is required to refer.

*McIntosh v. State ex rel. Wyo. Med. Comm'n*, 2007 WY 108, ¶ 32, 162 P.3d 483, 492 (Wyo. 2007).  Accordingly, a "medically contested case" "is one in which the primary issue requires the application of a medical judgment to complex medical facts or conflicting diagnoses." *McIntosh*, ¶ 33, 162 P.3d at 492 (quoting *Jacobs v. State ex rel., Wyo. Medical Comm'n*, 2005 WY 104, ¶ 10, 118 P.3d 441, 445 (Wyo. 2005) (quoting *French v. Amax Coal W.*, 960 P.2d 1023, 1030 (Wyo. 1998))).  "Consistent with the language and intent of the statute and the rule, this definition allows for referral to the Medical Commission when cases primarily involve medically contested issues, including but not limited to those identified in subsections (A) through (D) of the rule." *Id.*

[¶10]  The primary, and sole, issue in Mr. Polzer's case was whether Mr. Polzer's cervical spine injury was caused by his work accident.  To receive coverage, a workers'

4

compensation claimant must establish causation—that their injury arose "out of and in the course of employment." Wyo. Stat. Ann. § 27-14-102(a)(xi); *Matter of Lysne*, 2018 WY 107, ¶ 13, 426 P.3d 290, 295 (Wyo. 2018) (For an injury to "aris[e] out of and in the course of employment," there must be a "causal nexus between the injury and some condition, activity, environment or requirement of the employment." (citation omitted)). "An agency's determination of causation is a factual question." *Hart*, ¶ 15, 512 P.3d at 645; *see also Boylen v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 39, ¶¶ 14–15, 506 P.3d 765, 770 (Wyo. 2022); *Vinson*, ¶ 32, 473 P.3d at 310. "The claimant must show the causal connection to a reasonable degree of medical probability." *Hart*, ¶ 15, 512 P.3d at 645 (quoting *Guerrero*, ¶ 15, 352 P.3d at 267). *See also Baker v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 60, ¶ 10, 395 P.3d 1095, 1098–99 (Wyo. 2017) (for a claimant to prove a causal connection between the workplace accident and his injury, he is generally required to provide "expert medical testimony that it is more probable than not that the work contributed in a material fashion to the precipitation, aggravation or acceleration of the injury" (quoting *Eaton v. State ex rel. Dep't of Workforce Servs.*, 2015 WY 107, ¶ 7, 356 P.3d 765, 766–67 (Wyo. 2015))); and *Guerrero*, ¶ 15, 352 P.3d at 267 ("claimant must show the causal connection to a reasonable degree of medical probability").

[¶11]  Causation is typically, but not always, medically contested. Accordingly, both the OAH and the Medical Commission have determined causation. *See, e.g.*, *Lysne*, ¶ 16, 426 P.3d at 295 ("However, medical testimony is not required to establish causation in every instance. Proof of causation by a medical provider is not required in 'exceedingly obvious cases' such as when a single incident is alleged to have caused the injury."). *Vandom v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2023 WY 51, 529 P.3d 1084 (Wyo. 2023) (the OAH considered whether the claimant's cervical spine injuries were caused by her work-related accident); *Guerrero*, ¶¶ 19–21, 352 P.3d at 268–69 (the OAH determined that the claimant had not established causation where medical testimony indicated the injury was "possibly," as opposed to "most likely" or "probably," the result of a work-related incident); *Hart*, ¶¶ 18–20, 512 P.3d at 646–47 (the Medical Commission considered whether a workplace accident caused the claimant's thoracic spine (mid-back) injury).

[¶12]  Here, to resolve the question of whether Mr. Polzer's case should have been referred to the Medical Commission, we must determine whether causation was medically contested. That is, whether its resolution "requires the application of a medical judgment to complex medical facts or conflicting diagnoses." *McIntosh*, ¶ 33, 162 P.3d at 492 (quoting *French*, 960 P.2d at 1030). This is a fact-intensive inquiry and necessarily focuses on the information available to the Division at the time it referred the matter to the OAH. *See Bando*, 980 P.2d at 328–29 (relying on Division administrator's testimony regarding decision to refer matter to OAH and not Medical Commission).

[¶13]  The Division's final determination letter was issued on June 22, 2023, and on August 23, 2023, the Division issued its "Notice of Referral for Hearing" to the OAH, which states, "Treatment to the cervical spine is unrelated to the injury on 12/28/2020 to the lumbar spine, left knee, and right shoulder."  At that time, the Division knew:

- Mr. Polzer did not report cervical spine pain or injury during his visit to the emergency room on the day of his accident, and he did not report it on his employer's Report of Injury.  The emergency room records state Mr. Polzer "Did not hit his head" and note "No Evidence of Trauma," "Non Tender" neck, with "Painless" range of motion.  Mr. Polzer first reported cervical spine pain on February 2, 2021, approximately one month and one week after his work accident, to Dr. Young, one of his treating physicians.  In addition, notes from a February 10 initial physical therapy evaluation indicate that Mr. Polzer reported he "hit[] his neck and back" when he fell into the manhole.

- On February 8, Dr. Eric Schubert, a neurosurgeon, ordered X-rays and an MRI of Mr. Polzer's cervical spine.  Those tests revealed significant degeneration in Mr. Polzer's cervical and lumbar spine.  Dr. Schubert diagnosed degenerative disc disease in Mr. Polzer's cervical spine, which he believed to have been aggravated by the work injury, and sought preauthorization for neck surgery, which the Division denied on April 4, 2022.

- After Dr. Schubert's diagnosis, it became apparent that a key issue in Mr. Polzer's workers' compensation case would be whether the workplace accident aggravated a preexisting condition.[3]  Dr. Schubert referred Mr. Polzer to Dr. Steven Beer, another neurosurgeon.  Dr. Beer's chart notes corroborate Dr. Schubert's opinion that Mr. Polzer's cervical injury symptoms were caused by his work accident.  They stated, "I believe the fall was the source of complaints."[4]

---

[3] Dr. Schubert's deposition was submitted at the OAH hearing.  He testified Mr. Polzer's "pathology was all there prior to his injury and it became symptomatic from his injury, to the best of my knowledge.  But, again, I don't have any of the details of what actually transpired when he fell through that manhole."  When asked whether that condition was aggravated by Mr. Polzer's work accident, Dr. Schubert stated, it "could have been.  I don't know all the details of his injury other than he fell in a manhole."  He testified further that "taking Mr. Polzer at face value, and I have no reason not to, then I think -- yes, I think he had an aggravation to a preexisting condition. . . . I believe his pathology was all there prior to his injury and it became symptomatic from his injury . . . ."

[4] Dr. Beer testified at the OAH hearing by deposition.  He opined that Mr. Polzer's workplace fall was the source of his cervical spine pain.  To form this opinion, Dr. Beer relied on Mr. Polzer's subjective complaints and his understanding of the mechanics of the accident.  Dr. Beer also relied upon a December 10, 2020 MRI (conducted before the work accident) of Mr. Polzer's cervical spine.  Dr. Beer described the changes that occurred in Mr. Polzer's neck after his fall as "dramatic."  OAH questioned the credibility of that MRI because Mr. Polzer denied having had an MRI prior to his accident.  Dr. Beer explained that the MRI "is kind of suspect in a way.  It lists the date that it was done as December 10, 2020, but the time was 4:30 a.m."

- Dr. Brian H. Wieder conducted a peer review of Dr. Schubert's request for preauthorization of cervical spine fusion surgery. Dr. Wieder did not believe there was enough information in the medical records he reviewed to indicate whether Mr. Polzer's cervical spine injury was caused by his work accident. He noted, "[t]here is nothing documented in [Mr. Polzer's] description of symptoms or in the physical exam that gives . . . much insight as to the origin of [Mr. Polzer's] potential neck mediated symptoms."

- On December 2, 2021, Dr. Jed Shay conducted an independent medical evaluation (IME). Mr. Polzer reported to Dr. Shay that he sustained injuries to both shoulders and his neck during the fall. He explained that he did not report his cervical spine injury on his work report because he "did not . . . exactly feel all the body parts that were injured because they were all 'swollen up'" at the time. In his report, Dr. Shay concluded that Mr. Polzer's cervical spine injury was not causally related to his workplace accident. Dr. Marjorie Eskay-Auerbach performed a second peer review of Dr. Schubert's preauthorization request. She stated Mr. Polzer "does have degenerative disc disease in the cervical spine and a congenitally small canal; however, these findings, as noted by Dr. Shay, are unrelated to the subject industrial incident." It is unclear from her report whether Dr. Eskay-Auerbach performed an independent review of the record to determine causation or whether she relied on Dr. Shay's conclusion in that regard.

- Dr. Robert Monger performed a second IME of Mr. Polzer on May 9, 2022. Dr. Monger answered the question whether there was a direct causal connection between Mr. Polzer's cervical spine pain and his work injury as follows:

> No. In the Report of Injury form signed by Mr. Polzer there is no mention of neck pain or injury, and the emergency department records from 12/28/20 (the same day Mr. Polzer was injured) note in the review of [symptoms] that Mr. Polzer denied neck pain, and on physical exam Mr. Polzer's neck was nontender and had painless range of motion. In my professional opinion there is no direct causal connection between Mr. Polzer's current complaints of cervical spine pain and his original work-related injury of 12/28/2020.

[¶14] The evidence before the Division at the time it referred the matter to OAH required the application of medical judgment to complex medical facts and conflicting medical diagnoses. Three physicians opined Mr. Polzer's cervical spine injury was unrelated to the work accident; one concluded he did not have "much insight as to the origin" of Mr. Polzer's cervical spine injury; and two believed the injury to be either caused by the accident or that the accident aggravated a preexisting condition. We agree with Mr. Polzer that determining whether his work accident caused his cervical spine injury required

evaluating conflicting medical evidence. This matter should have been referred to the Medical Commission.

### *CONCLUSION*

[¶15] It is necessary to apply medical judgment to complex medical facts or conflicting diagnoses to determine the cause of Mr. Polzer's cervical spine injury, making this a "medically contested case." The Division was required to refer the matter to the Medical Commission. We reverse and remand for disposition in accordance with this opinion.